<em>Exceptions overruled.</em>

---

## COMMONWEALTH *vs.* DOMINIC CAPONI.

Norfolk.    February 1, 1892. — February 24, 1892.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Indictment — Variance — Marriage — Husband and Wife — Private Letters — Presumption.*

An indictment for polygamy alleged that the defendant was married first in Italy to "Dello Iacone Maria Grazia." A witness testified at the trial that the first wife's name was "Maria Gracia Dello Iacone," the last two being her family name, and the other two her given names; and that, in Italy, the given name was sometimes put first and sometimes the family name. *Held,* that the question whether there was a variance between the allegation and the proof was properly submitted to the jury.

The fact that a man who has a wife living, in contracting a marriage with another woman, does not conform to all the requirements of law preliminary to the marriage, is no defence to an indictment against the man for polygamy, if the facts are such as to justify the application of the Pub. Sts. c. 145, § 27, rendering certain marriages valid, though irregularly solemnized.

Written communications between husband and wife are not made inadmissible by the Pub. Sts. c. 169, § 18, cl. 1.

At the trial of an indictment for polygamy, two letters upon the same sheet of paper, both alleged to be written by the defendant, one, dated four months before the second marriage, to the woman with whom that marriage was contracted, and the other to his brother, in which he mentioned the receipt of a letter from "my wife," were offered in evidence by the government. The woman with whom the second marriage was contracted admitted, on cross-examination, that she could neither read nor write, but testified that she knew from examining the paper and handwriting that the letters were written by the defendant; and that they came to her by due course of mail. *Held,* that the letters were admissible.

At the trial of an indictment for polygamy, evidence that the defendant's first wife was alive and cohabiting with him in Italy within four years preceding the second marriage, in the absence of evidence of her death, was *held* to justify a finding that she was living at the time of that marriage, there being in addition evidence of the defendant's mention of his "wife" in a letter to his brother written four months before the second marriage.

INDICTMENT, alleging that the defendant, on December 17, 1885, in Italy, was lawfully married to one "Dello Iacone Maria Grazia"; and that he, on June 2, 1891, at Quincy in this Commonwealth, unlawfully married one Angelina Campani.

At the trial in the Superior Court, before *Sherman*, J., the government offered evidence tending to prove the marriage of the defendant with the woman called Dello Iacone Maria Grazia in the indictment, and his cohabitation with her in Italy in 1887–88. One witness testified that the name of this woman was Maria Gracia Dello Iacone, the last two names constituting her family name, and the other two her given names; and that in Italy the given name was sometimes put first, and sometimes the family name.

The defendant asked the judge to rule that there was a variance between the allegation and the proof; but the judge refused so to rule, and submitted the question of variance to the jury; and the defendant excepted.

To prove the fact of the marriage at Quincy on June 2, 1891, as alleged, the government offered evidence that the defendant and Angelina, who was sixteen years old, went on that day from Boston, where they resided, to Quincy, to get married; that they went to the city clerk's office and represented to him that the defendant resided in Quincy, and that Angelina was eighteen years old, and had no father or mother living; that the city clerk, at the defendant's request, duly issued to him a certificate of notice of the parties' intention to marry, and afterwards, at the request of both, acting in his capacity as a justice of the peace, joined them in marriage; and that they then returned to Boston, and there lived together as man and wife.

The government produced two letters upon the same sheet of paper, both alleged to be written by the defendant, one, dated February 2, 1891, to Angelina, and the other, in which mention was made of receiving "a letter of my wife from Italy," to his brother. Angelina, who admitted on cross-examination that she could neither read nor write, testified that she knew, from examining the paper and handwriting, that the letters were written by the defendant, and that they came to her by due course of mail. The government then offered the letters in evidence, and the defendant objected, on the ground that, as evidence

tending to prove a marriage between the parties, private communications between them were not competent, but the judge admitted them; and the defendant excepted.

At the close of the evidence, the defendant asked the judge to rule that there was no sufficient evidence to authorize a verdict of guilty, but the judge refused so to rule; and the defendant excepted.

The judge, among other things, instructed the jury that, if they were satisfied beyond a reasonable doubt that the defendant, having a former wife then living as charged in the indictment, went to Quincy with Angelina, and while there with her made the representations and requests testified to, and while there the city clerk, as a justice of the peace, solemnized a marriage between the defendant and Angelina, and they afterwards cohabited together as husband and wife, that would authorize the jury to convict the defendant, notwithstanding the defendant and Angelina had not given the statutory notice to obtain the preliminary certificate in Boston. The defendant excepted to this instruction.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*E. Greenhood*, for the defendant.

*C. N. Harris*, Second Assistant Attorney General, for the Commonwealth.

BARKER, J. 1. The refusal to rule that there was a variance was correct. There was evidence tending to prove the first marriage, as alleged in the indictment, with Dello Iacone Maria Grazia; the fact that the witness testified that the true name of that person was Maria Gracia Dello Iacone merely raised a question for the jury. *Commonwealth* v. *Gormley*, 133 Mass. 580, and cases cited.

2. The exception to that branch of the charge which dealt with the question of the second marriage must be overruled. There was abundant evidence to authorize the jury to find all the facts necessary to justify the application of the Pub. Sts. c. 145, § 27, which provide that, if the marriage is consummated with a full belief on the part of either of the parties that they have been lawfully joined in marriage, its validity shall not be in any way affected, either by want of jurisdiction in the magis-

trate, or by omission or informality in entering the intention of marriage. *Meyers* v. *Pope*, 110 Mass. 314. Hence, neither such want of jurisdiction, nor omission, nor informality could avail the defendant.

3. The defendant's letters were competent evidence against him. It is private conversations between husband and wife which the statute excludes, and not written communications. Pub. Sts. c. 169, § 18, cl. 1. 1 Greenl. Evid. § 254.

The identification of the letters by the witness was not rendered nugatory by her admission, upon cross-examination, that she could not read or write. She might still recognize them pictorially as the work of the defendant's hand, and the value of her identification was for the jury. *Foye* v. *Patch*, 132 Mass. 105.

4. The evidence that the defendant's wife was alive and cohabiting with him in Italy in 1887–88, in the absence of evidence of her death, justified a finding that she was living on June 2, 1891; in addition, there was the evidence of the defendant's admission in his letter to his brother.

*Exceptions overruled.*