### COMMONWEALTH *vs.* HARRY BELL & another.

On the trial of an indictment of A. and B. for larceny, the Commonwealth put in evidence tending to show that the owner of the stolen goods, proceeding with an officer and a warrant to search the messuages of both defendants, was met at A.'s house by both A. and B., when, on learning the authority and object of the search, B. declared that he would not permit them to search his own premises, and advised A. not to open his door; but that afterwards, on their searching the premises of B., he made no objection, and himself unlocked the door of an outbuilding, (six rods from his house,) where the goods were found. The defendant B. proved that the lock was a common one, easily opened with other keys or picked; and requested instructions to the jury, first, that the mere finding of stolen goods, in an outbuilding so situated and easy of access, would not alone warrant a verdict of guilty; and second, that no objection made by B. to the search of other prem-

ises than his own was to be considered by them against him. These requests the judge refused; and, as to the second one, ruled that B.'s remarks at A.'s house, if proved, might be considered by the jury as bearing on the question whether the stolen goods were in the outbuilding with B.'s knowledge or by his agency; and, as to the first one, instructed the jury that the fact of the finding of stolen goods, soon after the theft, in the immediate possession or in premises under the immediate control of a person indicted for the theft, was a fact to be considered by the jury with reference to all the accompanying circumstances, as bearing with more or less weight according as it was more or less strongly shown that such possession could not have existed without his agency or knowledge, with more weight if found on his person than if found in his house, and more weight if found in his house than if found in an outbuilding, and that, among the circumstances to be considered in the present case, were the situation of the outbuilding relatively to B.'s house, and the nature of the lock. *Held*, that B. had no ground of exception.

INDICTMENT charging the defendants in three counts, with three different larcenies. Trial in the superior court, before *Devens*, J., who allowed the following bill of exceptions :

" The Commonwealth produced evidence tending to establish the following facts : Harry Bell and Frank P. Bell each owned a farm in Coleraine, some half or three fourths of a mile apart. Frank had no family, and was not living in his own house at the exact time the larcenies were said to be committed, but was temporarily staying at the house of Harry. Harry's family consisted of himself and his mother. Allen L. Burrington missed some sheepskins, a blanket and a bridle on July 3, 1869; on the same day procured a search warrant to search the premises of both defendants; and on July 6 proceeded with an officer to make search. The officer and Burrington, arriving first at the house of Frank P. Bell, found both the defendants there. The officer made known the authority to search and the object of the search, and asked that the doors of the house, which were closed, should be opened. Harry Bell then said that they should not search his premises for Burrington's goods; that he would unlock no doors; that if they broke down doors it would be at their peril; and advised Frank not to open his doors. Frank refusing to open his doors, the officer entered through a window and made search, discovering nothing of the stolen property. The officer then proceeded to Harry's farm, accompanied by Burrington and the two defendants. It did not appear that any further objection to the search of Harry's premises was made than was made at the time of the search at Frank's house. The

house of Harry was open, and was searched without the discovery of any property. The officer then proceeded to the sugarhouse of Harry, situate on his grounds, at least six rods from his abode, and upon the highway. On request, Harry produced the key to this building, and unlocked it without objection. In this building Burrington's property was found, and some property of other persons, for the theft of which the second and third counts were framed.

" In the defence, there was uncontroverted evidence that the padlock which was on the sugar-house was a very common one, that many keys had been found, belonging to other locks, which opened this, both in Coleraine, in hardware stores in Greenfield, and at the court house, and that the lock could be easily picked with a nail, a wire, or a knife. One witness picked the lock with his knife, opening and locking it, on the stand before the jury. Other evidence as to whether Frank at the time lived or was only staying at Harry's was offered, which became immaterial in view of the action of the jury.

" The defendants asked the judge for instructions to the jury, 1. that the finding of stolen goods in an outhouse on the premises of, but separate from, the abode of the defendant, if the jury should find such outhouse to be easy of access, was not such presumptive evidence as to warrant a verdict of guilty, unless supported by other evidence than that of the finding; and 2. that no evidence of objections made by Harry Bell to the search of any premises other than his own, or those where the stolen goods were found, was to be considered by the jury against him.

" These instructions the judge refused, and on the first point instructed the jury, substantially, that, if the stolen articles were found, soon after a theft, in the immediate possession of the defendant, or in premises under his immediate control, it was a ʻact to be considered by them; that such fact should be considered with reference to all the accompanying circumstances, as it was one which would bear with greater or less weight as it was more or less clearly shown that such possession could not have taken place without the actual agency of the defendant, or

his knowledge; that it would be stronger evidence against a defendant, if a stolen article was found upon his person, than if found in his own apartment or in his house, and stronger in the latter case than if found in an outbuilding; that the jury in the present case were to consider all the circumstances which bore upon the question, whether the Commonwealth had shown that the stolen articles came into the outbuilding by the agency of the defendant, or with his knowledge, such as to whether the building was near the house, whether it was open to the access of others, whether it was under the lock and key of the defendant, and, if the latter, whether the lock was of a common description, easily opened by keys of others in common use, or other means.

"He further instructed them that the remarks made by the defendant at the house of Frank P. Bell, if proved, might be considered by them as bearing upon the question whether the stolen articles were in the outbuilding with the knowledge or by the agency of the defendant."

The jury found Harry Bell guilty, and disagreed as to Frank P. Bell; and Harry Bell alleged exceptions.

*W. S. B. Hopkins,* for Harry Bell.

*C. Allen,* Attorney General, for the Commonwealth.

COLT, J. The instructions given by the learned judge were entirely accurate, and, upon the evidence reported, (which may not have been all that was before the jury,) were warranted by the facts, and all that the case required. No request was made that the jury should be instructed that the evidence was not sufficient to warrant a conviction. The weight of the evidence, from all the circumstances, was for the jury. If they erred in their verdict, (and there is nothing in the case to show that they lid,) the mistake cannot be corrected on this bill of exceptions.

*Exceptions overruled.*